[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13023
The plaintiff has instituted this action against the defendant, North American Specialty Insurance Co., seeking to recover upon a Payment Bond and Performance Bond issued by the defendant to cover GT Construction Services, Inc. The bonds covered GT Construction Services, Inc. the general contractor for the construction of Westbrook Chemical Company No. 1 — North End Station in Westbrook, Connecticut.
The plaintiff claims it contracted with GT Construction Services Inc. as a subcontractor, and the general contractor breached the contract in failing to pay the plaintiff for all the work and labor furnished by the plaintiff. The plaintiff is therefore seeking to recover the sum of $19,551.99 the balance unpaid on the original contract price of $43,551.99.
The defendant denies there was a contract price of $43,551.99, and also denies the work was performed as claimed by the plaintiff.
The Performance and Payment Bonds were issued by the defendant on June 2, 1998 to GT Construction Services, Inc. in the amount of $229,980.00 to cover the construction contract for Westbrook Chemical Engine company No. 1 — North End Station in Westbrook, Connecticut. Keith C. Noun the builder and designer prepared the specification for the project, and then subcontractors were invited to bid for their contracts. GT Construction Services was the low bidder for the project for the sum of $229,980.00. The plaintiff was the successful bidder for the site work, excavations, foundation, concrete work and the installation of water lines. Pat Rubano the principal in the plaintiff corporation prepared the bid document submitted by the plaintiff, which was then accepted by the general contractor. The acceptance of the proposal by GT Construction then resulted in the contact with the plaintiff. Rubano requested the general contractor to provide prints and elevations which were never furnished, and Rubano first saw the specification in June 1998 after the plaintiff started its work.
The plaintiff claims it furnished an estimate in the amount of $53,301.20 for the subcontract, and after modifications as to the work to be performed in the amount of $9,749.21 it established a contract price of $43,551.99. The plaintiff argues it had only been paid the sum of $24,000 and the balance due on the contract is $19,551.99.
The defendant claims the total contract price was $49,382.20 and that it was entitled to reduce the sum of $13,065.45 for agreed deletions from CT Page 13024 the plaintiff's proposed contract price. Since it had paid the plaintiff $24,000 it left a balance due of $12,316.75 but it denies owing that sum because it claims it is entitled to a credit of $13,596.71 for services it claims the plaintiff failed to perform, therefore the defendant contends that it does not owe any sums to the plaintiff.
The evidence has established the original contract price was $53,062.30, and the parties agreed to deduct the following items from the contract which were to be provided by the general contractor.
 Steel Reinforcement Bars $450.00 Bark Run Gravel $1,479.00 Wire Mesh $1,170.00 Metal Door Caps $640.00 Gravel to Parking Lot $6,646.40 Delivery Costs for Gravel $2.680.00
$13,065.40
The reduction of that sum from the original contract price left the sum of $39,996.90 due. The plaintiff had been paid the sum of $24,000.00 which then left the net sum of $15,996.90 due to the plaintiff.
On May 18, 1999, the general contractor faxed a punch list to the plaintiff stating the only items remaining to be performed by the plaintiff related to cleaning and patching of floor drains and side walls. (Pl. Exh. 9). In June 1999, the general contractor was paid in full by the Town of Westbrook for the completion of the contract. At that time the plaintiff had been paid $24,000 for its subcontract, and the plaintiff was claiming it was entitled to the additional sum of $19,551.99. On November 10, 1999 the plaintiff filed a claim with the defendant for the sum due and sought payment under the Performance Bond issued by the defendant. (Pl. Exh. 10). When the general contractor was advised of the claim made by the plaintiff against the Performance Bond the general contractor in November 1999 then sent a list of back charges and set offs to the plaintiff. As a result of the general contractors claims the defendant bonding company denied the plaintiff's claim of payment under the Performance Bond.
The first portion of the list referred to the items to be deducted from the original contract price. These deductions, the court found above, amounted to $13,065.40 which then reduced the contract price to $39,996.90.
The second portion of the list then referred to back charges by the general contractor against the plaintiffs claim for the balance due on the contract. The general contractor contends the back charges exceeded CT Page 13025 the balance claimed by the plaintiff and therefore there is no balance owed to the plaintiff.
The timing of the general contractors claim for the back charges plus the fact that such a claim was not alleged in the pleadings, and the absence of any receipts, documents or written communication to the plaintiff clearly raises doubts as to the merits of these claims. This court finds that the back charges of the general contractor relating to site preparation, brush removal, repairs to the stone wall, help in pouring the concrete floors, and repairs to drains were not proven to the satisfaction of this court that they were valid back charges.
The evidence has also established the back charge of the general contractor for $8,296.71 relating to site compaction is also found not to have merit as a valid set off or, back charge. The delays in site compaction were caused by the failure of the general contractor to have the fill and gravel available in a timely fashion. Any cost overruns incurred with Tilcon related to the failure to provide the gravel and fill to the plaintiff prior to the closing of the asphalt plant in November 1999. Therefore, the addition costs for the paving of asphalt the following spring were caused by the actions of the general contractor.
All the work performed by the plaintiff was approved by the building inspector of the Town of Westbrook, and the general contractor was paid in full under the contract. The plaintiff in accordance with § 49-42
(a) of the C.G.S. properly notified the surety that issued the bond that the general contract had not paid for the subcontracted work in full.
For the foregoing reasons, judgment should enter for the plaintiff for the sum of $15,996.90 plus interest of one percent per month from November 10, 1999 to date of, payment in accordance with § 49-41a(b) of the C.G.S.
Howard Zoarski
Judge Trial Referee